UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KATHLEEN FINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00334-JAW |
| | ) | |
| CUP 4 CUP LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

A plaintiff brings suit against her former employer, seeking to recover allegedly unpaid wages and bonuses earned during the course of her employment. Before the Court is the defendants' motion to dismiss Counts II and IV of the plaintiff's amended complaint, which assert causes of action under the Maine Unfair Agreements statute, 26 M.R.S. § 629, and the Maine Timely Payment of Wages statute, 26 M.R.S. § 621-A. The Court dismisses the motion as to Count II because the defendants' proposed reading of 26 M.R.S. § 629 is overly restrictive and at odds with the plain language of the statute. Likewise, the court dismisses the motion as to Count IV because it remains unconvinced that terminated employees are categorically barred from bringing claims under 26 M.R.S. § 621-A, and there is insufficient evidence at this stage to conclude that the plaintiff falls within the statutory exception for salaried employees, as defined by 26 M.R.S. § 663(3)(K).

## I.   BACKGROUND

On September 13, 2022, Kathleen Finn filed a lawsuit in Cumberland County Superior Court in the State of Maine against her former employer, Cup4Cup, LLC, (Cup4Cup) and Restaurants by Thomas Keller, LLC d/b/a Thomas Keller Restaurant Group, seeking to recover allegedly unpaid wages and bonuses earned during her employment. *State Ct. R.*, Attach. 10, *Compl. and Demand for Jury Trial* (ECF No. 7-10). On October 26, 2022, Ms. Finn voluntarily dismissed Defendant Restaurants by Thomas Keller, LLC d/b/a Thomas Keller Restaurant Group. *Id.*, Attach. 5, *Notice of Voluntary Dismissal of Def. Restaurants by Thomas Keller, LLC d/b/a Thomas Keller Rest. Grp.* (ECF No. 7-5). That same day, Ms. Finn filed an amended complaint against Cup4Cup, which also named as a defendant French Laundry Restaurant Corporation d/b/a Thomas Keller Restaurant Group. *Id.*, Attach. 4., *First Am. Compl. and Demand for Jury Trial* (ECF No. 7-4) (*Am. Compl.*).

Ms. Finn's amended complaint contains four claims. Count I alleges violations of Maine's Unpaid Wages Statute, 26 M.R.S. § 626. *Id.* at 3. Count II alleges violations of the Maine Unfair Agreements law, 26 M.R.S. § 629. *Id.* at 3-4. Count III contains a breach of contract claim, alleging that the Defendants "failed to compensate Plaintiff for her performance, thereby breaching the Parties' employment contractual agreement." *Id.* at 4-5. Count IV alleges a violation of the Maine Timely Payment of Wages statute, 26 M.R.S. § 621-A. *Id.* at 5.

On October 28, 2022, the Defendants removed the case to federal court based on diversity jurisdiction. *Notice of Removal* (ECF No. 1). On December 8, 2022, the Defendants answered Ms. Finn's amended complaint. *Answer to Pl.'s First Am.*

*Compl.* (ECF No. 9).  That same day, the Defendants filed a motion to dismiss Counts II and IV of the amended complaint for failure to state a claim.  *Partial Mot. to Dismiss* (ECF No. 10) (*Defs.' Mot.*).   On December 29, 2022, Ms. Finn filed an opposition to the Defendants' motion.  *Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss* (ECF No. 14) (*Pl.'s Opp'n*).  On January 12, 2023, the Defendants replied.  *Defs.' Reply to Pl.'s Opp'n to Partial Mot. to Dismiss* (ECF No. 15) (*Defs.' Reply*).

On August 3, 2023, the Defendants filed a notice of intent to move for summary judgment.  *Defs.' Notice of Intent to File Mot. for Summ. J. and Req. for Pre-Filing Conference* (ECF No. 22).  On August 7, 2023, Ms. Finn also filed a notice of intent to move for summary judgment.  *Notice of Intent to File Summ. J. Mot. and Need for Pre-Filing Conference* (ECF No. 23).

## II.   FACTS[1]

Kathleen Finn resides in Portland, Maine. *Am. Compl.* ¶ 1.   Defendant Cup4Cup is a California limited liability corporation with a business address of 840 Latour Court, Suite B, Napa, California 94558.  *Id.* ¶ 2.  French Laundry Restaurant Corporation is a California corporation doing business as Thomas Keller Restaurant Group with a principal place of business at 6540 Washington Street, Yountville, California 95499.  *Id.* ¶ 3.  Thomas Keller Restaurant Group is a collection of related entities in the food and hospitality industry.  *Id.*  Thomas Keller Restaurant Group

---

[1]      Consistent with Federal Rule of Civil Procedure 12(b)(6), in describing the facts, the Court has relied upon the allegations in Ms. Finn's amended complaint.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014); *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) ("We examine whether the operative complaint states a claim for which relief can be granted when we construe the well-pleaded facts in the light most favorable to the plaintiffs, accepting their truth and drawing all reasonable inferences in plaintiffs' favor." (internal citations omitted)).

and Cup4Cup (Defendants) share employees, human resources functions, and marketing and operations personnel. *Id.* ¶ 5. The two entities also transfer funds between one another and share management functions. *Id.*

The Defendants were the joint employer of Ms. Finn.[2] *Id.* Ms. Finn was hired as a Sales Manager for the Defendants on or about April 1, 2018 at a salary of $90,000. *Id.* ¶ 6. On or about May 29, 2019, Ms. Finn's salary was increased to $94,500. *Id.* ¶ 7. In March 2020, when the COVID-19 pandemic struck the country, Ms. Finn was told she was being furloughed from work, and the Defendants stopped paying her. *Id.* ¶ 8. Nonetheless, the Defendants continued to engage the services of Ms. Finn and accepted her ongoing work on their behalf without paying her. *Id.* ¶ 9. The Defendants knew Ms. Finn continued to work because her customers were grocery stores, which remained open during pandemic shutdowns. *Id.* Ms. Finn attended buyer meetings, closed sales, coordinated with brokers in Canada and the United States, and ensured promotions were submitted on time. *Id.* She spoke with her boss and others in management on a daily and weekly basis, and she worked to keep the momentum of her sales work moving forward. *Id.* The Defendants did not pay Ms. Finn for her work from March 20, 2020 through June 1, 2020. *Id.*

On June 1, 2020, the Defendants sent Ms. Finn a letter stating that she was being called back to work on that date and would be paid $94,500 as a salary. *Id.*

---

[2] The Defendants assert as an affirmative defense that "French Laundry Restaurant Corporation did not employ Plaintiff." *Answer to Pl.'s First Am. Compl.* at 9. Because "factual allegations in the complaint must . . . be treated as true," the Court accepts for the purposes of the present motion that the Defendants jointly employed Ms. Finn. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The Court does not need to resolve this issue to rule on the pending motion.

¶ 10.  On November 16, 2020, Ms. Finn was promoted to National Sales Director, and her salary was increased to $120,000.  *Id.* ¶ 11.  At that time, Ms. Finn was told that she was also eligible to participate in an annual bonus program, which entitled her to up to an additional twenty-five percent (25%) of her base salary, in this case $30,000, to be distributed both quarterly and annually.  *Id.*

After her promotion, Ms. Finn met all performance measures the bonus program required.  *Id.* ¶ 12.  Accordingly, she should have been paid $30,000 bonuses in 2020 and 2021.  *Id.* ¶ 13.  Additionally, she should have been paid a $15,750 bonus for the first two quarters of 2022.  *Id.*  However, the Defendants only paid Ms. Finn one bonus payment in the amount of $3,137, for the first quarter of 2021.  *Id.*  Ms. Finn repeatedly demanded her bonus payments, which she had earned pursuant to the bonus program, but the Defendants refused, even though they did not document any personnel actions indicating that Ms. Finn did not meet the program criteria.  *Id.* After repeatedly demanding her bonus, Ms. Finn was terminated on July 13, 2022. *Id.* ¶ 15.

## III.   THE PARTIES' POSITIONS

### A.   Cup4Cup, LLC and French Laundry Restaurant Corporation's Partial Motion to Dismiss

The Defendants contend that Counts II and IV of Ms. Finn's amended complaint, which allege violations of the Maine Unfair Agreements statute, 26 M.R.S. § 629, and the Maine Timely Payment of Wages statute, 26 M.R.S. § 621-A, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted.  *Defs.' Mot.* at 1.

5

Concerning Count II of the amended complaint, the Defendants argue that "Maine's Unfair Agreements Statute requires specific allegations to be pled to state a violation," which the amended complaint "lacks." *Id.* at 3. The Defendants maintain that "the statute has only been interpreted as a measure to prohibit employers from forcing employees to work knowingly without pay in order to secure or retain future employment." *Id.* at 4 (quoting *Larson v. Johnson*, 184 F. Supp. 2d 26, 37 (D. Me. 2002)). Expanding on this point, the Defendants contend that the "language used in [26 M.R.S. § 629], forbidding 'any person' from being required to work 'as a condition of securing . . . employment,' is universal and plainly connotes coverage for trainees seeking a future position." *Id.* (alteration in original) (quoting *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993)). The Defendants go on to assert that the U.S. District Court for the District of Maine has rejected the argument that 26 M.R.S. § 629 "imposes a duty on employers not to allow employees to work without compensation." *Id.* (citing *Larson*, 184 F. Supp. 2d at 37). Instead, the Defendants argue that the district court has "essentially recognized that [26 M.R.S. § 629] does not apply to a typical claim of failure to pay wages for work performed." *Id.*

Against this legal background, the Defendants characterize Ms. Finn's complaint as "a straightforward failure to pay claim," which "is the same type of claim that the *Larson* court rejected." *Id.* The Defendants then assert that Ms. Finn "does not allege that she was forced to work knowingly without pay for a period of time in

order to secure or retain future employment," and as a result Count II of the amended complaint should be dismissed. *Id.*

Shifting to Count IV, the Defendants contend that 26 M.R.S. § 623 provides that Maine's Timely Payment of Wages statute, 26 M.R.S. § 621-A, does not apply to "salaried employees" as defined in 26 M.R.S. § 663(3)(K). *Id.* In turn, they say, 26 M.R.S. § 663(3)(K) defines a "salaried employee" as one "who works in a bona fide executive, administrative or professional capacity and whose regular compensation, when converted to an annual rate, exceeds 3000 times the State's minimum hourly wage or the annualized rate established . . . under the federal Fair Labor Standards Act, whichever is higher." *Id.* (quoting 26 M.R.S.§ 663(3)(K)). The Defendants also represent that "the Maine Department of Labor defines the term 'salaried employee' to mean 'an employee who receives a predetermined fixed amount of wages that is no less than the amount required by 26 [M.R.S.] § 663(3)(K) which is paid on a weekly or less frequent basis." *Id.* (quoting *Bocko v. Univ. of Me. Sys.*, No. CV-21-184, 2022 Me. Super. LEXIS 127, at *6 (Me. Super. Ct. Sept. 6, 2022)).

Applying this legal background to the present case, the Defendants contend that "Finn's allegations . . . establish that she was a salaried employee earning far in excess of 3000 times the State's minimum hourly wage." *Id.* at 6. According to the Defendants, Ms. Finn's annual salary of $94,500 is well above the threshold established by 26 M.R.S. § 663(3)(K), and "she was in a professional position of Sales Manager in 2020 with responsibilities that included attending buyer meetings, closing sales, and coordinating with brokers to ensure promotions were submitted on

time." *Id.* Therefore, the Defendants contend, "Finn was a professional salaried employee whose regular compensation exceeded 3000 times the State's minimum hourly wage," and 26 M.R.S. § 621-A "did not apply to her, and she cannot seek relief" pursuant to the statutory provision. *Id.*

The Defendants buttress their conclusion that Count IV should be dismissed by claiming that there "is a separate and independent basis for dismissal of Count IV." *Id.* Specifically, the Defendants contend that 26 M.R.S. § 621-A "is limited to claims brought by current employees seeking to obtain unpaid wages," and Ms. Finn "is not a current employee of Cup4Cup." *Id.* In support of this conclusion, the Defendants cite *Goode v. Signet Electronic Systems, Inc.*, No. 06-65-P-S, 2006 U.S. Dist. LEXIS 38489 (D. Me. June 8, 2006), in which, they claim, the court "dismissed the plaintiff's Section 621-A claim because the complaint could not 'reasonably be construed to allege that the plaintiff is currently employed by the defendant.'" *Id.* at 6-7 (quoting *Goode*, 2006 U.S. Dist. LEXIS 28489, at *21). The Defendants also dispute that there remains "an open question 'whether a terminated employee may still initiate a cause of action under section 621-A for unpaid wages which he sought and was not paid when he was employed.'" *Id.* at 7 & n.3 (quoting *OfficeMax Inc. v. Cnty. Qwik Print, Inc.*, 802 F. Supp. 2d 271, 282 (D. Me. 2011)). The Defendants further contend that the Court must dismiss Ms. Finn's claim even if it follows *OfficeMax* because she "does not allege that she sought payment of these unpaid wages pursuant to Section 621-A while she was still employed." *Id.* at 7. Therefore,

the Defendants maintain, no matter what view the Court adopts, Ms. Finn "has not stated a plausible claim for relief in Count IV." *Id.*

### B.     Kathleen Finn's Opposition to the Motion to Dismiss

Ms. Finn sets the stage for her opposition by declaring that "[p]erhaps the most fundamental principal of employment law is that an employer must pay its employees when they work." *Pl.'s Opp'n* at 1.  According to Ms. Finn, the "Maine Statutes provide a variety of mechanisms to enforce an employee's right to be paid for the employee's work," and the "statutory scheme is broadly construed to favor ensuring employees are paid." *Id.*  "This case," Ms. Finn argues, "is about the right to be paid," because she "was not paid on two instances by her employer." *Id.*  Further, she contends, the facts in the amended complaint "set out properly pled causes of action under various parts of Maine's wage payment statutory scheme, even if ultimately, certain aspects of the statutory sections pled do not match the facts as proven after trial." *Id.* at 3.

Turning to Count II of her amended complaint, Ms. Finn contends that the Maine Unfair Agreements statute, 26 M.R.S. § 629, "is designed to protect all persons in Maine from being forced to work without pay." *Id.* (quoting *Cooper*, 635 A.2d at 955).  "Contrary to Defendants' arguments," she continues, "*Cooper* stands for the proposition that the term 'work' must be broadly construed." *Id.*  According to Ms. Finn, the employer in *Cooper* "was attempting to argue that the employees should not be paid for training time because, according to the employer, it was not within the meaning of the word 'work,'" and the court "rejected the employer's limited

definition." *Id.* at 3-4.  Therefore, Ms. Finn argues, "[n]othing in the *Cooper* decision supports Defendants' proposed interpretation" of 26 M.R.S. § 629.  *Id.* at 4.

Turning to *Larson*, the second case on which the Defendants rely, Ms. Finn concedes that the *Larson* court "may have commented on how § 629 has been interpreted," but, she counters, "it certainly did not limit the statute to the interpretation Defendants suggest." *Id.* at 4.  Ms. Finn takes issue with the notion that *Larson* rejected her argument that 26 M.R.S. § 629 "imposes a duty on employers not to allow employees to work without compensation." *Id.* (quoting *Defs.' Mot.* at 4). She goes on to point out that the plaintiff in *Larson* was an independent contractor, and she further contends that "Defendants' quotes are so highly out of context to the argument they claim the cases support as to make the position disingenuous." *Id.*

Contrary to the Defendants' position, Ms. Finn continues, "Maine Courts have been clear about an employer's obligation to pay its employees and the liberal interpretation of the statutory scheme designed to enforce an employer's obligation." *Id.* (citing *In re Wage Payment Litig.*, 750 A.2d 217, 225 (Me. 2000) (Calkins, J., dissenting)).  In support of this contention, she observes that 26 M.R.S. § 626-A, which sets out penalties and damages for a variety of statutory provisions, including 26 M.R.S. § 629, "refers in its language to recovery for 'unpaid wages,' without distinction or limitation." *Id.* at 4-5 (citing *Beckwith v. United Parcel Serv.*, 889 F.2d 344, 351 n.12 (1st Cir. 1989)).  Therefore, she concludes, "the weight of authority supports an interpretation of § 629 to include all wages, not just those for work designed to secure future employment." *Id.* at 5.

"Even if the statute were limited as Defendants suggest," Ms. Finn argues her amended complaint does "allege that she was forced to work knowingly without pay for a period of time in order to secure future employment." *Id.* at 5. Ms. Finn represents that the reason she "needed to keep sales momentum moving forward was future work," because the "amount of sales that occurred during the pandemic affected her ability to work and pay, if she were to be brought back from termination."[3] *Id.* at 5. Therefore, Ms. Finn argues that she "has alleged that she worked, with the knowledge of her employer, in order to secure future work." *Id.*

With respect to Count IV of her amended complaint, Ms. Finn argues against Defendants' position that 26 M.R.S. § 621-A "does not apply to [her] claim because she was paid on a salary basis." *Id.* at 6. Ms. Finn then asserts that "[t]o claim she was paid on a salary basis during the period of time that she was working and not paid at all defies all logic." *Id.*

Ms. Finn goes on to accuse the Defendants of attempting "to find a loophole in the payment statutes by claiming that the Plaintiff cannot make a claim under § 621-A because she is no longer employed by the company." *Id.* To the contrary, she

---

[3]     In a footnote in her opposition, Ms. Finn writes:

> Plaintiff[] asserts that the reason that momentum was important was to secure Finn's pay and work in the future is within the inference of Paragraph 9 of the Amended Complaint. However, if the Court does not view the allegation within the inferences of the Amended Complaint, Plaintiff would request leave to amend.

*Pl.'s Opp'n* at 5 n.2. The Court declines to engage in Ms. Finn's request that it assist her in deciding what allegations should or should not be in her complaint. The Plaintiff, not the Court, is the "master" of her complaint. *Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 35 F.4th 44, 51 (1st Cir. 2022) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). If Ms. Finn wishes to amend her complaint, she should follow Federal Rule of Civil Procedure 15(a), not make an off-handed conditional request in a footnote.

contends, "the Courts have never held that an employee forfeits a right to wages not paid while working once the employee leaves that very employment." *Id.* (citing *In re Wage Payment Litig.*, 759 A.2d at 223).

Further, Ms. Finn asserts that the "Defendants dismiss authority that a motion to dismiss is an inappropriate device to pigeon hole Plaintiff's right to be paid for her work into a particular statutory section." *Id.* (citing *OfficeMax*, 802 F. Supp. 2d at 282). According to Ms. Finn, *OfficeMax* "recognized that an employer's conduct could potentially violate various statutory provisions at the motion to dismiss stage of the case and that a Plaintiff should not be foreclosed from recovering for not being paid by choosing only one provision." *Id.* Here, she continues, the "facts and circumstances surrounding the failure to pay could fall within several alternative provisions of the Maine wage statutes," and this "type of a situation is exactly why the Court [in *OfficeMax*] declined to grant a Motion to Dismiss, even though the Court had doubts about the applicability of § 621-A to terminated employees." *Id.* (citing *OfficeMax*, 802 F. Supp. 2d at 282). In conclusion, Ms. Finn suggests that to "attempt to force Plaintiff's claims into separate, mutually exclusive categories of claims when the facts could alternatively apply to many, is contrary to the statutory purpose" and "only serves to allow Defendants an opportunity to create a loop hole that would undermine the mandate: employees must be paid for their work." *Id.*

## C.   The Defendants' Reply in Support of Their Motion to Dismiss

In their reply, the Defendants contend that Ms. Finn's opposition "fails to establish that her Complaint states a plausible claim against the Defendants under either 26 M.R.S. § 629 (Count II) or § 621-A (Count IV)." *Defs.' Reply* at 1.

"Therefore," they continue, "Counts II and IV of Plaintiff's First Amended Complaint should be dismissed with prejudice." *Id.*

With respect to Count II, the Defendants reiterate that Ms. Finn "fails to allege that she was required or permitted to work without pay 'as a condition of securing or retaining employment.'" *Id.* (quoting 26 M.R.S. § 629). The Defendants contend:

> [E]ven assuming that Finn worked during the furlough period in order to build a stronger sales record that would enhance her employability and pay, and even assuming that her employer knew she was doing that, none of that amounts to an allegation that her work during the furlough was involuntary or that it was a 'condition of securing or retaining employment' placed upon her by the Defendants.

*Id.* at 2 (quoting 26 M.R.S. § 629). The Defendants further suggest that there "is nothing in the language of Section 629 indicating that an employee's motivation to augment her job performance constitutes a 'condition of securing or retaining employment' imposed by the employer." *Id.*

For additional support, the Defendants once again look to *Larson*. According to the Defendants, the *Larson* plaintiff claimed that the defendants in that case had "'the duty not to allow him to work without compensation' including the 'affirmative responsibility to inform plaintiff that he would not be compensated for his work.'" *Id.* (quoting *Larson*, 184 F. Supp. 2d at 37). However, the Defendants maintain, the *Larson* court observed that "Maine courts have never read into section 629 an affirmative obligation to inform persons that they are working without pay. . . . [T]he statute has only been interpreted . . . to prohibit employers from *forcing employees to work knowingly without pay in order to secure or retain future employment*." *Id.* at 2-3 (emphasis in original) (quoting *Larson*, 184 F. Supp. 2d at 37). Because Ms. Finn

"does not allege that Defendants made performing work during furlough a *condition* of her continued employment," the Defendants posit that she has failed to state a claim under 26 M.R.S. § 629.  *Id.* at 3 (emphasis in original).

Turning to Ms. Finn's opposition, the Defendants suggest that "Finn essentially asks the Court to disregard the phrase 'as a condition of securing or retaining employment' contained in" 26 M.R.S. § 629.  *Id.*  This, according to the Defendants, runs afoul of the "familiar canon of statutory construction [that] cautions the court to avoid interpreting a statute in a way as to make part of it meaningless." *Id.* (quoting *Allende v. Shultz*, 845 F.2d 1111, 1119 (1st Cir. 1988)).

Further, the Defendants contend that *Beckwith*, which Ms. Finn cites, does not support her position because the *Beckwith* court "had no occasion to interpret the language of the first provision [of 26 M.R.S. § 629] (the one at issue here), and it took care not to do so."  *Id.* at 4 (citing *Beckwith*, 889 F.2d at 351 n.12).  In conclusion, the Defendants reiterate that 26 M.R.S. § 629 "is a specific provision that applies only where an employee has been forced to work knowingly without pay as a condition of securing or retaining future employment," and the amended complaint "simply does not paint such a picture."  *Id.*

Turning to Count IV, the Defendants assert that the "plain language of [26 M.R.S. § 623] is unambiguous; Section 621-A 'do[es] not apply' to salaried employees as defined in Section 663(3)(K)."  *Id.* (alteration in original) (quoting 26 M.R.S. § 623). They then observe that Ms. Finn "does not dispute that the amount she earned rendered her a 'salaried employee' as defined by Section 663(3)(K)."  *Id.*  Further,

according to the Defendants, "it would eviscerate Section 623's exemption for salaried employees" if the Court adopts Ms. Finn's argument that "she should not be considered a salaried employee for the period of time during which she was not paid." *Id.* at 4-5.  The Defendants maintain that such a result "is clearly not the intent of the statute." *Id.* at 5.

Finally, the Defendants suggest that a cause of action under 26 M.R.S. § 621-A is only available if an employer "has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday." *Id.* (quoting *In re Wage Payment Litig.*, 759 A.2d at 223).  More plainly put, the Defendants argue that a "cause of action under Section 621-A simply is not available to a former employee." *Id.*  Because the Maine Legislature clearly intended "to exclude professional salaried employees . . . from asserting a cause of action for unpaid wages under Section 621-A," the Defendants assert that Count IV of Ms. Finn's amended complaint must be dismissed. *Id.* at 6.

## IV.   LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citations omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). This inquiry is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

### A.   The Maine Unfair Agreements Statute – 26 M.R.S. § 629

26 M.R.S. § 629 provides:

**1. Work without compensation; return of compensation.** A person, firm or corporation may not require or permit any person as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, oral, written or implied, that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person, or for the payment of any merchandise purchased from the employer or for sick or accident benefits, or life or group insurance premiums, excluding compensation insurance, that an employee has agreed to pay, or for rent, light or water expense of a company-owned house or building.  This section does not apply to work performed in agriculture or in or about a private home.

The critical language is that a "corporation may not require or permit any person as a condition of securing or retaining employment to work without monetary compensation."  The two primary cases interpreting 26 M.R.S § 629, as identified by the parties, are *Cooper v. Springfield Terminal Railway Co.*, 635 A.2d 952 (Me. 1993), and *Larson v. Johnson*, 184 F. Supp. 2d 26 (D. Me. 2002).  Since these cases are integral to the parties' arguments, the Court recounts them in some detail.

In *Cooper*, a group of railroad employees brought suit alleging that the defendant railway's "practice of requiring certain employees . . . to qualify for new positions by training without pay" violated 26 M.R.S § 629.  *Cooper*, 635 A.2d at 954.  On appeal to the Supreme Judicial Court of Maine (Law Court), the defendant railway argued that the plaintiff employees "did not perform 'work' within the meaning of" 26 M.R.S. § 629.  *Id.*  Specifically, the railway asked the Law Court "to adopt a definition of work that would exclude tasks performed in the course of training programs."  *Id.* at 955.

The Law Court rejected this argument, observing that 26 M.R.S. § 629 "is designed to protect all persons in Maine from being forced to work without pay."  *Id.*

17

Referring to the dispute before it, the Law Court noted that the "language used in section 629 . . . is universal and plainly connotes coverage for trainees seeking to obtain a position." *Id.* The Law Court went on to find that the plaintiff employees had performed "work" within the meaning of 26 M.R.S. § 629 because they "actually performed many of the job functions without close, or in some cases any, supervision" during their training, and "some of their activities benefitted" the defendant. *Id.*

Several years after *Cooper*, Judge Singal of this District was asked to interpret 26 M.R.S. § 629 in *Larson*. There, plaintiff Larson, an independent contractor, brought a variety of claims seeking payment for construction work performed at the request of defendant Johnson. *Larson*, 184 F. Supp. 2d at 30-31. Specifically, Larson alleged that he had demanded to be paid $6,700 per month when Johnson approached him and asked for his services. *Id.* at 30. Johnson responded that he would "take care of" Larson. *Id.* Larson interpreted this to mean that "he would be paid at least the sum he had been paid for [a] previous job, although the form of the payment would be subject to [Johnson's] 'whim.'" *Id.* at 31. Johnson contested this interpretation, claiming that both parties understood his statement "to mean that Johnson could compensate Larson as much, or as little, as Johnson wished at the end of the project." *Id.* Despite making several demands for payment to various individuals and entities involved with the construction project, Larson was never paid. *Id.*

In seeking to recover the wages he was allegedly owed, Larson did not bring a claim directly under 26 M.R.S. § 629. *See id.* Instead, 26 M.R.S. § 629 was relevant to a negligent misrepresentation claim brought by Larson against a corporation and

a trust involved in the construction project.  *See id.* at 37.  Larson alleged that these entities were liable for negligent misrepresentation "because they indirectly benefitted from the work he performed on the shop project, and misrepresented their intent not to compensate him by silently acquiescing to his participation." *Id.*  Under Maine law, "silence may be interpreted as a misrepresentation if the party who remains silent is under a statutory duty to disclose information to a plaintiff." *Id.* (citing *Binette v. Dyer Libr. Ass'n*, 688 A.2d 898, 903 (Me. 1996)).  Larson argued that 26 M.R.S. § 629 imposed upon the defendants the statutory duty "not to allow him to work without compensation," which "encompassed the affirmative responsibility to inform Plaintiff that he would not be compensated for his work." *Id.*

Judge Singal rejected this argument, noting that "Maine courts have never read into section 629 an affirmative obligation to inform persons that they are working without pay." *Id.*  He went on to observe that "[i]n the handful of times it has been construed, [26 M.R.S. § 629] has only been interpreted as a measure to prohibit employers from forcing employees to work knowingly without pay in order to secure or retain future employment." *Id.* (citing *Cooper*, 635 A.2d at 952).  His ultimate conclusion, however, was simply that 26 M.R.S. § 629 "contains no affirmative notice requirement, and did not require [the defendants] to inform Plaintiff of his pro bono status." *Id.*

In the Court's view, *Cooper* and *Larson* fail to paint a clear picture of how 26 M.R.S. § 629 should be interpreted here.  *Cooper* only involved a statutory term—the meaning of "work"—not relevant to this case, and *Larson* merely established that 26

M.R.S. § 629 does not create a duty to disclose for purposes of establishing a duty under a negligent misrepresentation claim.

The Defendants, however, suggest these two cases establish that 26 M.R.S. § 629 "is a specific provision that applies only where an employee has been forced to work knowingly without pay as a condition of securing or retaining future employment." *Defs.' Reply* at 4. The Court declines to adopt the Defendants' overly strict statutory construction.

### 1.   The "Require or Permit" Language of 26 M.R.S. § 629

To begin, the Defendants' claim that 26 M.R.S. § 629 only prohibits employers from *forcing* employees to work without pay conflicts with the plain language of the statute. Courts interpreting Maine statutes must "look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *State v. Shepley*, 822 A.2d 1147, 1151 (Me. 2003) (quoting *Pennings v. Pennings*, 786 A.2d 622, 627 (Me. 2002)). "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as [people] of common intelligence would usually ascribe to them." *State v. Vaino*, 466 A.2d 471, 474 (Me. 1983). If a statutory term is undefined, its "plain, common, and ordinary meaning" can be ascertained by, among other things, examining dictionary definitions. *See Palmieri v. Nynex Long Distance Co.*, 437 F.3d 111, 116 (1st Cir. 2006) (interpreting 26 M.R.S. § 663(3)(C) according to the rules of statutory interpretation applied by Maine courts).

Here, 26 M.R.S. § 629 provides that a "person, firm or corporation may not *require or permit* any person . . . to work without monetary compensation." 26 M.R.S.

§ 629 (emphasis supplied).  The statute does not define "require" or "permit," so the Court looks to dictionaries to determine the terms' plain, common, and ordinary meaning.  Merriam-Webster defines "require" as "to claim or ask for by right and authority" or "to impose a compulsion or command on."  *Require*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/require (last updated Nov. 8, 2023).  It defines "permit" as "to consent to expressly or formally."  *Permit*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/permit (last updated Nov. 5, 2023). Black's Law Dictionary similarly defines "permit" as to "consent to formally; to allow (something) to happen."  *Permit*, BLACK'S LAW DICTIONARY (11th ed. 2019).  In short, "require" has a similar meaning to "demand," while "permit" has a similar meaning to "allow."

According to the Defendants, 26 M.R.S. § 629 only applies "where an employee has been forced to work."  *Defs.' Mot.* at 4.  Merriam-Webster defines "force" as "to compel by physical, moral, or intellectual means."  *Force*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/force (last updated Nov. 5, 2023). While this definition is similar to the definition of "require," it differs considerably from the definition of "permit."  In fact, according to Merriam-Webster, "permit" is an antonym of "force."  *Force*, MERRIAM-WEBSTER, https://www.merriam-webster.com/thesaurus/force (last visited Nov. 15, 2023).  Therefore, the Court concludes that the ordinary meanings of "permit" and "require" differ, and the ordinary meaning of "permit" clashes with the Defendants' suggested interpretation of the statute.

To accept the Defendants' interpretation of "require or permit" would effectively excise "or permit" from 26 M.R.S. § 629. To do so would violate a "cardinal principle of statutory construction that [a court] must give effect, if possible, to every clause and word of a statute." *Novak v. Bank of N.Y. Mellon Trust Co., N.A.*, 783 F.3d 910, 913 (1st Cir. 2015) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)); *see Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1985) ("[W]e must give effect to every word that Congress used in the statute"); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174-79 (2012) (noting that this surplusage canon of construction is known under the Latin phrase, *verba cum effectu sunt accipienda*).

The Defendants attempt to overcome this conclusion using quotations from *Cooper* and *Larson*. *See, e.g.*, *Defs.' Mot.* at 4 ("In the handful of times it has been construed, the statute has only been interpreted as a measure to prohibit employers from forcing employees to work knowingly without pay in order to secure or retain future employment" (quoting *Larson*, 184 F. Supp. 2d at 37)). But neither *Cooper* nor *Larson* purported to interpret the "or permit" language of 26 M.R.S. § 629. In *Cooper*, Springfield Terminal Railway had required its employees to engage in unpaid training, so the Law Court did not reach the "or permit" language of 26 M.R.S. § 629. 635 A.2d at 954 ("This case arises out of a dispute resulting from defendant Springfield Terminal Railway Company's practice of *requiring* certain employees . . . to qualify for new positions by training without pay" (emphasis supplied)). Similarly, in *Larson*, the district court did not address the "or permit" language, except to say

that whatever duty 26 M.R.S. § 629 imposed, it did not "encompass[] the affirmative responsibility to inform Plaintiff that he would not be compensated for his work."  184 F. Supp. 2d at 37.  To be liable under 26 M.R.S. § 629 for permitting someone to work without compensation is one thing; to be responsible to affirmatively inform a person that the work is without compensation another.  Nor have the Defendants supplied any other authority that supports their proposed statutory interpretation, and the Court is aware of none.  Therefore, the Court will interpret "permit" and "require" according to their ordinary meanings, and the Court rejects the Defendants' argument that 26 M.R.S. § 629 only prohibits employers from forcing employees to work without pay.

### 2. The "As a Condition of Securing or Retaining Employment" Language of 26 M.R.S. § 629

The Defendants also claim that Ms. Finn has failed to allege that she worked without pay "as a condition of securing or retaining employment."  *See* 26 M.R.S. § 629.  They assert that Ms. Finn's "allegations that Defendants knew she was working without pay during furlough, allowed her to continued doing so, and benefitted from her work fall short of stating a claim under Section 629 because she does not allege that Defendants made performing work during furlough a *condition* of her continued employment."  *Defs.' Reply* at 3 (emphasis in original).  Ms. Finn counters that the reason she "needed to keep sales momentum moving forward was future work," because the "amount of sales that occurred during the pandemic affected her ability to work and pay, if she were to be brought back from termination." *Pl.'s Opp'n* at 5.

Like "require" and "permit," "condition" is not defined in 26 M.R.S. § 629.  As a result, the Court once again turns to dictionaries for guidance.  Merriam-Webster defines "condition" as "a premise upon which fulfillment of an agreement depends" or "something essential to the appearance or occurrence of something else."  *Condition*, MERRIAM-WEBSTER,   https://www.merriam-webster.com/dictionary/condition   (last updated Nov. 14, 2023).  Black's Law Dictionary contains a nearly identical definition: "A future and uncertain event on which the existence or extent of an obligation or liability depends."  *Condition*, BLACK'S LAW DICTIONARY (11th ed. 2019).  The Defendants appear to be correct to the extent that Ms. Finn's amended complaint does not explicitly allege that the Defendants told Ms. Finn that she had to continue working if she hoped to be called back to work.  In the context of a motion to dismiss, however, such an explicit allegation is unnecessary.

The First Circuit has instructed courts adjudicating motions to dismiss to ask "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted."  *Germanowski*, 854 F.3d at 71 (citing *Ocasio-Hernández*, 640 F.3d at 7).  "A complaint clears this hurdle when the facts alleged, which we take as true, and the inferences they support, which we draw in the plaintiff's favor, 'plausibly narrate a claim for relief.'"  *Id.* (quoting *Schatz*, 669 F.3d at 55).  In reviewing a motion to dismiss, a court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006)).

Ms. Finn has alleged that "when the COVID Pandemic struck the country," she "was told she was furloughed from work and Defendant stopped paying her." *Am. Compl.* ¶ 8. A furlough is a "leave of absence." *Furlough*, BLACK'S LAW DICTIONARY (11th ed. 2019). A "leave of absence" is defined as "[a] worker's temporary absence from employment or duty with the intention to return." *Leave of Absence*, BLACK'S LAW DICTIONARY (11th ed. 2019). Despite being on a leave of absence, Ms. Finn "attended buyer meetings, closed sales, coordinated with Canadian and United States brokers and ensured promotions were submitted on time." *Am. Compl.* ¶ 9. She also "spoke with her boss and others in management on a daily and weekly basis" and "worked to keep the momentum of her sales work moving forward." *Id.* In other words, she continued to work. Thus, Ms. Finn's situation during this interval is difficult to categorize; perhaps it is best described as a hybrid between a traditional furlough, where the employee is entirely absent from work, and an unpaid, working vacation, where the employee, though not present and not paid, performs some essential functions with the knowledge, acquiescence, and expectation of her employer.

Viewing the facts in the amended complaint in the light most favorable to Ms. Finn, as it must, the Court concludes that they support the reasonable inference that Ms. Finn is alleging that she worked without pay as a condition of being called back to work. Because Ms. Finn was furloughed, and not terminated, it is reasonable to infer that she believed the Defendants might bring her back to work but that the Defendants would take a dim view of her loyalty and drive if she refused to continue

performing some essential tasks during her furlough.  To accept the interpretation advanced by the Defendants—that Ms. Finn merely worked "to augment her job performance"—would run counter to how the Court must interpret facts at the motion-to-dismiss stage.

Starting with the premise that the amended complaint supports the reasonable inference that Ms. Finn was not guaranteed her job back, it follows, again viewing the facts in the light most favorable to Ms. Finn, that she is alleging that her continuing to work was essential to her being called back to work from furlough.  At the time of her furlough, Ms. Finn was a Sales Manager.  *Am. Compl.* ¶ 6.  Sales professionals are typically hired when there is sufficient demand for a product such that their services are needed.  *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 920 (8th Cir. 2000) (observing that "the selling of product is the primary responsibility of a salesperson").  It stands to reason, then, that the Defendants planned to call Ms. Finn back to work if customer demand became high enough to justify bringing on an additional salesperson.  By attempting "to keep the momentum of her sales work moving forward," Ms. Finn was driving the demand that would be essential to retaining her employment.  After all, sales managers are not in demand without sales opportunities.  Therefore, contrary to the interpretation advanced by the Defendants, the Court finds that Ms. Finn's continuing to work without pay during her furlough may have been essential to her retaining employment and therefore a condition of thereof.

In light of the reasonable inferences drawn above, the Court concludes that the Defendants' proposed interpretation of 26 M.R.S. § 629 is overly restrictive. The Defendants cite no caselaw in support of their argument that a "condition" under 26 M.R.S. § 629 must be "placed upon" an employee by their employer, *see Defs.' Reply* at 2, and the Court is aware of none. Further, the definitions of "condition" cited above nowhere suggest that a condition must be explicit or formally imposed.

In essence, the Defendants invite the Court to interpret 26 M.R.S. § 629 in a manner that allows employers to avoid liability simply by refraining from communicating the conditions necessary to secure or retain employment; the Court declines to do so. Instead, the Court finds that the allegations in Ms. Finn's amended complaint, along with the reasonable inferences therefrom, sufficiently make out a claim that Ms. Finn was permitted by the Defendants to work without pay in order to drive the demand that was essential to her getting back to work.

### 3. The Importance of Procedural Posture

In assessing this motion, the Court finds helpful *Barber v. Bauer Hockey, LLC*, No. 21-cv-742-SE, 2022 U.S. Dist. LEXIS 189580 (D.N.H. Oct. 18, 2022). In *Barber*, the employer furloughed employees without pay because of the COVID-19 pandemic. *Id.* at *4. However, the employer continued to provide furloughed employees with benefits and cellphone service during this period. *Id.* It further restricted employees from using its business email and electronic systems but required them to back up their business contacts on their cellphones to allow them to continue to work and communicate with customers on the employer's behalf. *Id.* The district court in *Barber* granted conditional certification to this group of furloughed workers in their

27

Fair Labor Standards Act (FLSA) claim. *Id.* at *11-12. In so doing, it opined that the employer's arguments against certification, "which largely focus[ed] on factual issues," "are better addressed in the second stage of litigation after discovery has taken place." *Id.* at *12

Here, as *Barber* discusses, there are facts not apparent on the face of Ms. Finn's amended complaint that could inform the Court's legal conclusions. For example, Ms. Finn alleges that she "attended buyer meetings, closed sales, coordinated with Canadian and United States brokers and ensured promotions were submitted on time" as well as "spoke with her boss and others in management on a daily and weekly basis." *Am. Compl.* ¶ 9. No modern business operates without employee access to a computer system, without cellphone communication, without password protected security systems, and without other essential means of business communication and storage. By the allegations in paragraph nine of the amended complaint, the Court could reasonably infer that Ms. Finn's continued work for the Defendants required her continued access to and use of their business platforms. However, the extent of such use and its significance are better assessed in a motion for summary judgment.

Finally, to this end, it is significant that neither *Cooper* nor *Larson* was decided on a motion to dismiss. Each was decided on a motion for summary judgment. *Larson*, 184 F. Supp. 2d at 29 ("Presently before the Court is Defendants' Motion for Summary Judgment"); *Cooper*, 635 A.2d at 954 (This action followed Springfield Terminal's denial of compensation, and resulted in a summary judgment in favor of the Employees").

Accordingly, the Court dismisses the Defendants' motion to dismiss as to Count II of the amended complaint.

### B.    The Maine Timely Payment of Wages Statute – 26 M.R.S. § 621-A

#### 1.    Bona Fide Professional Capacity

26 M.R.S. § 621-A provides, in relevant part, that "[a]t regular intervals not to exceed 16 days, every employer must pay in full all wages earned by each employee, except members of the family of the employer and salaried employees."  26 M.R.S. § 623 provides that 26 M.R.S. § 621-A does not apply to "family members and salaried employees as defined in section 663, subsection 3, paragraphs J and K."[4]  26 M.R.S. § 663(3)(J) involves members of the employer's family and does not apply here. Regarding salaried employees, section 663(3)(K) provides:

> **3. Employee**.  "Employee," [means] any individual employed or permitted to work by an employer but the following individuals shall be exempt from this subchapter:
>
> > **K.**  A salaried employee who works in a bona fide executive, administrative or professional capacity and whose regular compensation, when converted to an annual rate, exceeds 3000 times the State's minimum hourly wage or the annualized rate established by the United States Department of Labor under the federal Fair Labor Standards Act, whichever is higher.

26 M.R.S. § 663(3)(K).  The Defendants convincingly argue that Ms. Finn made sufficient earnings to qualify as a "salaried employee" under this provision, since she "receive[d] a predetermined fixed amount of wages that is no less than the amount

---

[4]      26 M.R.S. §§ 621-A and 623 have been amended since Ms. Finn filed her amended complaint. As a result of these amendments, the exemptions for family members of the employer and salaried employees can be found in the text of 26 M.R.S. § 621-A itself.  Although this change does not affect the actual substance of the exemptions, the Court uses the statutory framework in effect when the amended complaint was filed.  *See* 1 M.R.S. § 302 ("Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby").

required by 26 [M.R.S.] § 663(3)(K) which [was] paid on a weekly or less frequent basis." *Defs.' Mot.* at 5-6 (quoting *Bocko*, 2022 Me. Super. LEXIS 127, at *6 (quoting C.M.R. 12-170, ch. 16, § II.F)). The Defendants also establish that Ms. Finn earned at least the "amount required by 26 M.R.S. § 663(3)(K)" because Ms. Finn alleges in her amended complaint that she was earning an annual salary of at least $94,500 in 2020, increasing to $120,000 in November 2020. *Am. Compl.* ¶¶ 7, 10-11.

The issue, then, is whether based on the allegations in the amended complaint, Ms. Finn worked in a "bona fide executive, administrative or professional capacity." The Defendants state in their motion that Ms. Finn "alleges that she was in a professional position of Sales Manager in 2020." *Defs.' Mot.* at 6 (citing *Am. Compl.* ¶¶ 6, 9). But this is not quite correct. Ms. Finn does allege that she "was hired as a Sales Manager for the Defendant on or about April 1, 2018 at a salary of $90,000." *Am. Compl.* ¶ 6. She also alleges that she "attended buyer meetings, closed sales, coordinated with Canadian and United States brokers and ensured promotions were submitted on time" and "spoke with her boss and others in management on a daily and weekly basis." *Id.* ¶ 9. But Ms. Finn nowhere alleges that she worked in a "professional capacity." The Court therefore turns to whether the amended complaint alleges duties that would, without more, fit within the definition of being employed "in a bona fide . . . professional capacity."

Where, as here, "a term is not defined in either the relevant statutory provisions or in prior decisions of [the Law Court], Maine Courts may look to analogous federal statutes, regulations, and case law for guidance." *Gordon v. Me.*

*Central R.R.*, 657 A.2d 785, 786 (Me. 1995) (citing *Dir. of the Bureau of Lab. Standards v. Cormier*, 527 A.2d 1297, 1299 (Me. 1987)).  The Law Court previously condoned examining federal laws and regulations to interpret 26 M.R.S. § 663(3)(K), the statutory provision at issue here.  *See id.* (rejecting the argument "that the trial court erred in looking to federal law and regulations to define the term 'administrative'" in 26 M.R.S. § 663(3)(K)).  Examining federal analogues is particularly appropriate in this case because the FLSA contains a provision that is nearly identical to 26 M.R.S. § 663(3)(K).[5]  *Compare* 26 U.S.C. § 213(a)(1) (excluding "any employee employed in a bona fide executive, administrative, or professional capacity" from certain provisions of the FLSA), *with* 26 M.R.S. § 663(3)(K) (defining a "salaried employee" as "one who works in a bona fide executive, administrative or professional capacity").

The Code of Federal Regulations defines "administrative," "executive," and "professional" for purposes of 26 U.S.C. § 213(a)(1) in three different provisions.  *See* 29 C.F.R. § 541.200(a) (defining "employee employed in a bona fide administrative capacity"); 29 C.F.R. § 541.100(a) (defining "employee employed in a bona fide executive capacity"); 29 C.F.R. § 541.300 (defining "employee employed in a bona fide professional capacity").

---

[5]      It is true that the definition in the FLSA applies to employees who are exempted from the law's overtime provisions.  *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995).  However, "salaried employees," as defined by 26 M.R.S. § 663(3)(K), are also exempted from Maine's overtime laws.  *Avery v. Kennebec Millwork, Inc.*, No. CV-02-131, 2004 Me. Super. LEXIS 50, at *4 (Me. Super. Ct. Feb. 3, 2004).  The Court sees no reason to interpret 26 M.R.S. § 663(3)(K) differently just because the underlying claim here arises under Maine's Timely Payment of Wages statute, 26 M.R.S. § 621-A.

Arguing that Ms. Finn herself claimed in the amended complaint that she "was in a professional position in 2020," *Defs.' Mot.* at 6, the Defendants simply assert that, based on the allegations in the amended complaint, Ms. Finn fits within the statutory definition of being employed in a bona fide professional capacity under 26 M.R.S. § 663(3)(K). The Court is not so sure. Pursuant to 29 C.F.R. § 541.300(a), an "employee employed in a bona fide professional capacity" means, among other things,[6] any employee "[w]hose primary duty is the performance of work: (i) [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or (ii) [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." Additionally, a "job title is not determinative of whether an employee is exempt under the FLSA." *Holden v. Cenpatico Behav. Health, LLC*, 347 F. Supp. 3d 77, 85 (D. Mass. 2017). "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description." *Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 42 (S.D.N.Y. 2012) (quoting *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997)).

According to the amended complaint, "Ms. Finn attended buyer meetings, closed sales, coordinated with Canadian and United States brokers and ensured promotions were submitted on time." *Am. Compl.* ¶ 9. None of these duties appears

---

[6]     29 C.F.R. § 541.300(a)(1) includes a minimum salary requirement. Because 26 M.R.S. § 663(3)(K) includes its own minimum salary requirement, the Court declines to reproduce the minimum salary required under 29 C.F.R. § 541.300(a)(1).

to require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" or "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." *See* 26 M.R.S. § 663(3)(K). Therefore, the Court cannot conclude from the sparse facts in the amended complaint that Ms. Finn meets the requirements of 26 M.R.S. § 663(3)(K) because there is insufficient evidence to conclude that she worked for the Defendants in a "bona fide . . . professional capacity." *See* 26 M.R.S. § 663(3)(K).

The determination of whether an individual is employed in a bona fide executive, administrative, or professional capacity "remains intensely fact bound and case specific." *Smith v. Schwan's Home Serv.*, No. 2:13-cv-00231-JAW, 2014 U.S. Dist. LEXIS 165883, at *80 (D. Me. Nov. 25, 2014) (quoting *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 114 (D. Me. 1998)). At this stage, the Court does not have sufficient facts to say for purposes of this motion to dismiss whether Ms. Finn worked in a bona fide executive, administrative or professional capacity. How the facts on this issue are presented to the Court in the contemplated motion for summary judgment remains to be seen. However, the Court views a motion to dismiss as an unsatisfactory vehicle to resolve this mixed question of law and fact.

### 2. Current vs. Terminated Employees

The Defendants also argue that Ms. Finn's claim under 26 M.R.S. § 621-A should be dismissed because there is no dispute that Ms. Finn no longer works for the Defendants and, according to the Defendants, the statute only applies to current employees. *Defs.' Mot.* at 6-7. Ms. Finn acknowledges that "the Courts have held

that the statutory sections § 621-A and § 626 apply to different types of unpaid wages," but contests that "the Courts have never held that an employee forfeits a right to wages not paid while working once the employee leaves that very employment." *Pl.'s Opp'n* at 6. She also accuses the Defendants of dismissing "authority that a motion to dismiss is an inappropriate device to pigeon hole Plaintiff's right to be paid for her work into a particular statutory section." *Id.* The Court agrees with the Defendants—to a point—that 26 M.R.S. § 621-A is limited to current employees; however, the Court declines to grant the Defendants' motion for the same reasons that have given it pause when adjudicating this issue in the past.

The notion that 26 M.R.S. § 621-A does not provide a cause of action for former employees can be traced to its predecessor statute, 26 M.R.S. § 621. *See Goode*, 2006 U.S. Dist. LEXIS 38489, at *20 n.4. In adjudicating a claim involving 26 M.R.S. § 621, the Law Court wrote:

> Thus, the statute reveals a legislative intent to allow a private litigant recourse against an employer for an unpaid wage only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, *see* 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, *see* 26 M.R.S.A. §§ 621, 626-A.

*In re Wage Payment Litig.*, 759 A.2d at 223. A few years later, a district judge relied in part on the Law Court's statement to dismiss a claim under 26 M.R.S. § 621-A because "[t]here is no sense in which the complaint may reasonably be construed to allege that the plaintiff is currently employed by the defendant." *Goode*, 2006 U.S. Dist. LEXIS, at *21.

In *OfficeMax*, 802 F. Supp. 2d 271, this Court was asked to rule on the applicability of 26 M.R.S. § 621-A to former employees while adjudicating a motion to dismiss. The Court acknowledged that "the statutes and caselaw are clear that section 621-A applies to current employees and section 626 to terminated employees." *Id.* at 282. It cautioned, however, that "the intersection of these sections remains murky." *Id.* Specifically, the Court noted:

> The question remains whether terminated employees are strictly limited to relief under section 626 or whether a terminated employee may still initiate a cause of action under section 621-A for unpaid wages which he sought and was not paid when he was employed. More to the point, there is no suggestion that the Maine Legislature intended to omit a subclass of employees from the protections of its prompt wage payment provisions and the Court will resist interpreting these statutory sections so as to leave a gap in coverage.

*Id.* The Defendants have not identified any authority, nor is the Court aware of any, resolving the open question identified in *OfficeMax*.

The Defendants argue that *OfficeMax* merely suggested that 26 M.R.S. § 621-A might allow a former employee to recover "unpaid wages which he sought and was not paid when he was employed," and "Finn does not allege that she sought payment of these unpaid wages pursuant to Section 621-A while she was still employed." *Defs.' Mot.* at 7. It is true that Ms. Finn has not expressly alleged that she demanded her unpaid salary while still employed. But the allegation in the amended complaint is silent about the timing of her demand and is therefore ambiguous. *Am. Compl.* ¶ 19 ("Plaintiff has demanded her unpaid wages and earned bonus but Defendant has refused to pay"). The Court declines at this stage in the proceedings to interpret this

allegation against Ms. Finn and, instead views it in the light most favorable to her. This alone is sufficient reason to reject the Defendants' motion to dismiss.

Moreover, the same was also the case in *OfficeMax*. 802 F. Supp. 2d at 283 ("Neither the original nor the amended Counterclaim Count III makes any allegation that [former employees] demanded back pay"). Given the lack of developments since *OfficeMax*, the Court remains concerned "that dismissal of one of the statutory causes of action will inadvertently expose a crack in the statutory scheme" through which Ms. Finn may fall. *Id.* The Court is particularly concerned here because the parties have already completed discovery, and newly revealed facts will likely shed light on whether Ms. Finn has a valid claim under 26 M.R.S. § 621-A.

The wiser course, in the Court's view, is to allow Ms. Finn's claim to proceed and for the parties to develop a factual record that allows the Court to assess these legal issues with confidence about whether unresolved factual disputes preclude a definitive ruling. As in *OfficeMax*, "the Court declines to dismiss one of these statutory causes of action and leaves for another day a more definitive legal ruling based on more definitive facts." *Id.*

## VI. CONCLUSION

The Court DISMISSES without prejudice the Defendants' Partial Motion to Dismiss as to Counts II and IV (ECF No. 10).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of November, 2023